IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID R. A.,[1]                        )
                                       )
       Plaintiff,              )
                                       )
vs.                                    ) Civil No. 18-cv-109-CJP[2]
                                       )
COMMISSIONER OF SOCIAL                 )
SECURITY,                              )
                                       )
       Defendant.              )

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in March 2014. He amended the alleged date of onset to October 12, 2013. After holding an evidentiary hearing, ALJ Gregory M. Beatty denied the application on April 12, 2017. (Tr. 20-31). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 7.

1

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. Whether the ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace in the residual functional capacity finding;

2. Whether the ALJ erred by failing to accord adequate weight to the opinions of the claimant's treating physicians.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an

> alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).  *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative

answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Beatty followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of hearing loss not treated with cochlear implants, gastritis and duodenitis, essential hypertension, degenerative disc disease, bipolar disorder, and post-traumatic stress disorder (PTSD). He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had moderate limitations in concentrating, persisting, or maintaining pace.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do light work, which requires standing or walking for 6 hours in an 8–hour workday, with the following limitations:

> can climb ramps and stairs occasionally, but he can never climb ladders, ropes, or scaffolds. He can balance occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights or near moving mechanical parts. He can never operate a motor vehicle. He could occasionally be exposed to vibration and dust, odors, fumes and other pulmonary irritants. He could work in an environment with moderate noise. The claimant is limited to simple, routine tasks, but not at a production rate pace. He is limited to simple work-related decisions. He could sustain occasional contact with coworkers, supervisors and the public. The claimant is limited to tolerating few changes in a routine work setting, defined as infrequent changes, explained in advance.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not able to do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.

1. **Agency Forms**

Plaintiff was born in 1966 and was almost 48 years old on the alleged onset date. (Tr. 299). He previously worked as a mining equipment tire servicer and machine operator in a tire repair shop. (Tr. 95, 287, 302-303). A prior application had been denied as of October 11, 2013. (Tr. 129-141).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in June 2017. (Tr. 42).

Plaintiff testified that he had a constant pain in his lower back that radiated up to his left shoulder, left arm, and neck when he engaged in any activity other than sitting or lying down flat. (Tr. 51-52). Plaintiff stated that he spent most of his day either sitting or lying down flat to reduce his symptoms. (Tr. 52). He also said that sitting for an extended period exacerbated his symptoms and pain medication only reduced them. (Tr. 49).

Plaintiff further testified that he was seeing a psychiatrist every two or three months for PTSD and obsessive compulsive disorder (OCD), along with attending weekly therapy sessions. (Tr. 53). He had paranoia, panic attacks, and suffered the effects of social isolation due to pain. (Tr. 64). He also had trouble dressing and his family assisted him with daily tasks. (Tr. 61, 67).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical

question which corresponded to the RFC assessment. The VE identified three jobs that could be done by a person with plaintiff's RFC: cleaner, housekeeping (DOT 323.687-014), marker (DOT 209.587-034), and mail clerk (DOT 209.687-026). The VE testified to the number of each of those jobs in the national economy. (Tr. 70). Adding to the light work hypothetical, plaintiff's counsel asked the VE to identify the number of jobs available for an individual incapable of completing a normal workday or workweek 21-40 percent of the time because of psychologically based symptoms or the inability to maintain attention and concentration for extended periods. (Tr. 76-77). The VE testified that there would be no jobs in the national economy using the hypothetical. (Tr. 78).

### 3. Medical Records

Plaintiff was seen by Dr. James Bordieri, Ph.D., a clinical psychologist, in 2014. Dr. Bordieri cited two events that negatively impacted plaintiff's life and resulted in his significant medical history. First, when plaintiff was still working, he was changing a tire at work when it suddenly exploded and caused a fracture in his skull, a broken clavicle, a hematoma in his brain, constant tinnitus, and partial hearing loss. Second, in 2012, a tornado tore apart plaintiff's house while he and his wife were inside. As a result, plaintiff suffered six broken ribs, a broken sternum, a collapsed lung, and another broken clavicle. Following the tornado, doctors placed a steel plate and four screws in plaintiff's back and fused together two discs of his spine. (Tr. 416)

Dr. Bordieri observed that plaintiff was in constant physical pain and plaintiff reported that the injuries from the tornado left him incapable of doing

7

anything. (Tr. 416). He found that plaintiff's concentration and attention were both negatively affected by his physical pain. (Tr. 417). Dr. Bordieri additionally noted that plaintiff was diagnosed with celiac disease after the tornado and had high blood pressure. Plaintiff was prescribed several medications for these problems, including Lisinopril, Lovastatin, Gemfibrozil, Zantac, Prilosec, Zofran, and Loritab. Dr. Bordieri further reported that plaintiff suffered from depression and anxiety, for which he was prescribed Xanax and Celexa. (Tr. 416-417).

Dr. Bordieri ran numerous psychological and cognitive tests on plaintiff and found that plaintiff generally tested in the lower range of intellectual functioning. He stated, however, that some of these scores could be underestimates of his intellectual functioning. Dr. Bordieri also discovered from testing that plaintiff suffered from major depressive episode, social anxiety disorder, and PTSD. (Tr. 430).

Plaintiff's treating physician, Dr. Adam Vargo, M.D., saw him nine times from 2013 through 2017 and diagnosed him with chronic joint pain. (Tr. 511-512). He also found that plaintiff had generalized muscle tenderness, stiffness, a reduced range of motion, and increasing memory impairment. (Tr. 511-512, 677-685, 848-855, 913-915, 971-973). In September 2015, he completed a form to assess plaintiff's ability to do work-related activities, stating that plaintiff could lift 11 pounds for one repetition and carry 11 pounds up to 20 feet with a guarded motion. (Tr. 651). He said that plaintiff would be able to sit 15 minutes at a time per hour and stand and walk for 10 minutes at a time, but he needed frequent 15 minute breaks on an unscheduled basis during the workday. (Tr. 652). Dr. Vargo

summarily remarked that plaintiff was not able to work.  (Tr. 656, 658).

Plaintiff's treating psychiatrist, Dr, Rakesh Chandra, M.D., saw him at least eleven times from 2013 through 2017 and diagnosed him with major depressive disorder, PTSD, and, eventually, bipolar disorder.  He prescribed Prozac, Olanzapine, Xanax, and Buspar, eventually changing plaintiff's medication cocktail to Prozac, Zyprexa, Xanax, and Anafranil.  (Tr. 502-505, 508, 511, 756-760, 776-777, 833-838, 933-934).  In his last note, Dr. Chandra reported that plaintiff was doing well on his medicine and had no problems or difficulties to report.  (Tr. 933).  In order to clarify his statements on plaintiff's progress, Dr. Chandra wrote to plaintiff's previous attorney, asserting that plaintiff "reached the maximum improvement in his case with psychotherapy and medication" and that it "still means he is at this point only at 30-40 % of what he could of been prior to his injuries and problems."  (Tr. 11).  He also completed a form to assess plaintiff's ability to do work-related activities in October 2015, finding that plaintiff had marked limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

4. **State Agency Consultants' Mental RFC Assessments**

In June 2014, acting as a state agency consultant, Howard Tin, Psy.D., assessed plaintiff's mental RFC.  He used an electronic version of an agency form that is commonly used for this purpose in social security cases.  (Tr. 156-158).

The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas. The form explains that the "actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (Tr. 156).

Dr. Tin answered "yes" to the question "[d]oes the individual have sustained concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods. He rated the plaintiff as "not significantly limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In the section entitled "MRFC-Additional Explanation," Dr. Tin wrote that plaintiff "does not handle stress nor changes in routine well" and "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." Additionally, Dr. Tin stated that plaintiff "has the ability to respond appropriately to changes in work settings, being aware of normal hazards and travel in unfamiliar settings."

In April 2015, acting as a state agency consultant, David Voss, Ph.D., assessed plaintiff's mental RFC based on a review of the file contents. He used the electronic form Dr. Tin previously used to assess plaintiff. (Tr. 175-177). Dr. Voss answered "yes" to the question "[d]oes the individual have sustained

concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods. He rated the plaintiff as "moderately limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Explaining his answer, Dr. Voss wrote that plaintiff's "attention, concentration and persistence would be adequate for completing routine repetitive unskilled tasks at a consistent pace over a regular 40 hour workweek," but he "will have difficulty carrying out complex tasks or detailed instructions."

## Analysis

Plaintiff's first argument bears significant fruit. Plaintiff argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence, or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis." (Tr. 23). The ALJ gave "significant weight" to the state agency consultants' narrative explanations in the mental RFC assessment form but failed to acknowledge that they both opined that plaintiff had moderate limitations in his ability to carry out detailed instructions and in his ability to maintain attention and concentration for extended periods. Instead, the ALJ seemed to focus on their consensus that plaintiff was capable of performing "simple tasks" or "routine repetitive unskilled tasks." Nor did he acknowledge the fact that one of the state agency consultants, Dr. Tin, contradicted himself in his assessment, in one place stating that plaintiff "does not handle stress nor changes in routine well" and in another place stating that plaintiff "has the ability to respond appropriately to changes in work settings, being aware of normal hazards and travel in unfamiliar settings."

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister

courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

On February 8, 2019, the Seventh Circuit issued another decision in this line of cases, *Winsted v. Berryhill*, ___ F.3d ___, 2019 WL 494052 (7th Cir. Feb. 8, 2019). The Court stated, "[a]gain and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." (citations omitted). We have also made clear that in most cases "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area.'"

In *Winsted*, at step three, the ALJ found that the plaintiff had moderate difficulty with social functioning and concentration, persistence, and pace. The RFC assessment limited plaintiff to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." *Winsted*, 2019 WL 494052, at *3. The Court held that the hypothetical question based on that RFC assessment was erroneous because it "did not direct the expert to consider problems with concentration, persistence, and pace, which is the

13

hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted*, 2019 WL 494052, at *4 (emphasis in original). As in *Winsted*, the RFC assessment and the hypothetical question here are erroneous because they do not account for plaintiff's moderate limitation in maintaining concentration, persistence, or pace.

The Commissioner argues that the ALJ included the limitations assessed by the state agency consultants. She also points out that the ALJ limited plaintiff to simple, routine tasks, but not at a production rate pace, and simple work-related decisions. Doc. 28, p. 14. Her argument ignores the moderate limitations that both state consultants assessed in ability to maintain attention and concentration for extended periods and the ability to perform activities within a schedule. Neither did the state consultants or the ALJ explain *how* a limitation to simple unskilled work with no fast-paced production requirements accommodates moderate limitations in ability to maintain attention and concentration for extended periods and the ability to perform activities within a schedule. The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Moreover, the ALJ must also "offer good reasons for discounting" the opinion

of a treating physician. 20 C.F.R. § 416.927(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. 20 C.F.R. § 404.1527(c)(2)-(5); *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Ibid.*

The ALJ failed to meet this standard on many fronts. Most importantly, Dr. Chandra clearly did not mean "all better" when he stated that plaintiff was "doing well" on his medications in his last note. Dr. Chandra stated as much after realizing that his treatment records were taken out of context. Dr. Chandra diagnosed plaintiff with bipolar disorder and PTSD. Both diagnoses typically present multiple episodes during the lifetime of an individual who is diagnosed.[3][4] The ALJ's gross simplification of the complexities of plaintiff's mental state, as interpreted by Dr. Chandra, and then the disposal of other parts of his treater opinion using that simplification, does not meet the standards set forth to dismiss a treater's opinion. Additionally, the ALJ's assignment of greater weight to pieces of a treater's opinion advantageous to his conclusion, while conversely dismissing

---

[3] "Episodes of mood swings may occur rarely or multiple times a year." https://www.mayoclinic.org/diseases-conditions/bipolar-disorder/symptoms-causes/syc-20355955 (referring to bipolar disorder), visited on February 21, 2019.

[4] "Most people who go through traumatic events may have temporary difficulty adjusting and coping, but with time and good self-care, they usually get better. If the symptoms get worse, last for months or even years, and interfere with your day-to-day functioning, you may have PTSD." https://www.mayoclinic.org/diseases-conditions/post-traumatic-stress-disorder/symptoms-causes/syc-20355967, visited on February 20, 2019.

other pieces that do not fit that narrative, smacks of the sort of cherry-picking rejected by this Circuit. See, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The ALJ's errors require remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** February 21, 2019.

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
